UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MASTERSON, an individual; and LINDA FREEMAN, individually and as trustee of The Linda Freeman Trust,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EUROFINS LANCASTER LABORATORIES, INC., a Minnesota corporation; EUROFINS AIR TOXICS, INC., a California corporation; and EUROFINS ENVIRONMENT TESTING US HOLDINGS, INC., a Delaware corporation; and DOES 1 through 20,<br><br>　　　　Defendant. | No.   2:14-cv-02226 JAM-CKD<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING DEFENDANT EUROFINS AIR TOXICS, INC.'S MOTION TO DISMISS** |

　　This matter is before the Court on Plaintiffs Ronald Masterson and Linda Freeman's ("Plaintiffs") Motion to Remand the matter to state court.  Also before the Court is Defendant Eurofins Air Toxics, Inc.'s ("Defendant" or "Air Toxics") Motion to Dismiss.  For the following reasons, Plaintiffs' Motion to Remand is GRANTED and Defendant's Motion to Dismiss is DENIED AS

1

MOOT.[1]

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiffs Masterson and Freeman are California residents. FAC ¶¶ 1-2. In 1989, Plaintiffs formed Airtox, Inc., which became Air Toxics after the closing of the transaction that is the subject of this lawsuit. FAC ¶ 10. This company was – and is – a California corporation whose business "includes providing and performing source emissions and ambient air testing using a wide range of methods." FAC ¶¶ 4, 10. Through 2011, Plaintiffs were the sole shareholders of Air Toxics. FAC ¶ 12.

Defendants Eurofins Lancaster Laboratories, Inc. ("Lancaster Labs") and Eurofins Environment Testing US Holdings, Inc. ("Eurofins Environmental") are Minnesota and Delaware corporations, respectively. FAC ¶¶ 3, 5. In 2012, Lancaster Labs and Eurofins Environmental purchased Plaintiffs' shares in Air Toxics, via a written contract ("the Stock Purchase Agreement"). FAC ¶ 19. All parties to the current lawsuit signed the Stock Purchase Agreement – including Defendant Air Toxics. FAC, Ex. A.

Pursuant to the Agreement, Plaintiffs' shares were transferred to Eurofins Environmental, in exchange for an initial payment of approximately $8.7 million and a deferred payment of $4 million. The deferred payment would only be made if Air Toxics attained certain revenue thresholds in 2012 and 2013. FAC

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for November 19, 2014.

¶ 22.  The heart of Plaintiffs' FAC is that, in breach of express and implied covenants in the Stock Purchase Agreement, "Air Toxics' air testing operations revenue and resources were . . . diverted to the materials testing, for the purposes of growing the materials testing operations."  MTR at 3; FAC ¶ 44.  As the "materials testing operations of Air Toxics was not profitable at this time, . . . the air testing operations lost revenue and resources," and the revenue thresholds were not met.  FAC ¶ 44.  No deferred payment was made to Plaintiffs.  FAC ¶ 47.

On August 21, 2014, Plaintiffs filed the FAC in Sacramento County Superior Court.  Soon thereafter, Defendants removed the matter to this Court.  The FAC includes the following five causes of action: (1) fraud (misrepresentation); (2) fraud (promise made); (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; (5) accounting.  Of these, only the fourth and fifth causes of action are brought against Defendant Air Toxics.

## II.  OPINION

A.  <u>Legal Standard: Motion to Remand and Fraudulent Joinder</u>

Generally, a state civil action is removable to federal court only if it might have been brought originally in federal court.  <u>See</u> 28 U.S.C. § 1441.  The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992) (citing <u>Boggs v. Lewis</u>, 863 F.2d 662, 663 (9th Cir. 1988); <u>Takeda v. Northwestern National Life Insurance Co.</u>, 765 F.2d 815, 818 (9th

3

1  Cir. 1985)).  Thus, "[f]ederal jurisdiction must be rejected if
2  there is any doubt as to the right of removal in the first
3  instance."  Id. (citing Libhart v. Santa Monica Dairy Co., 592
4  F.2d 1062, 1064 (9th Cir. 1979)).  "The 'strong presumption'
5  against removal jurisdiction means that the defendant always has
6  the burden of establishing that removal is proper."  Id. (citing
7  Nishimoto v. Federman-Bachrach & Associates, 903 F.2d 709, 712 n.
8  3 (9th Cir. 1990); Emrich v. Touche Ross & Co., 846 F.2d 1190,
9  1195 (9th Cir. 1988)).  To establish diversity jurisdiction, the
10 defendant must show that complete diversity exists among the
11 parties and that the amount in controversy exceeds $75,000.  28
12 U.S.C. § 1332.
13     Complete diversity does not exist unless all plaintiffs are
14 citizens of different states than all defendants.  Morris v.
15 Princess Cruises, Inc., 236 F. 3d 1061, 1067 (9th Cir. 2001)
16 (citing Caterpillar v. Lewis, 519 U.S. 61, 68 (1996));
17 Strawbridge v. Curtiss, 7 U.S. 267, 267 (1806).  This so-called
18 "Strawbridge" drawbridge" closes – and federal jurisdiction will
19 not lie – in an action in which any plaintiff shares the same
20 citizenship as any defendant.  On the face of Plaintiffs' FAC,
21 complete diversity does not exist: Plaintiffs Masterson and
22 Freeman are citizens of California, as is Defendant Air Toxics.
23     However, an exception to the complete diversity requirement
24 exists when the removing party can show that the plaintiffs have
25 "fraudulently joined" the non-diverse defendant, for the purpose
26 of thwarting removal to federal court.  Morris v. Princess
27 Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001).  The Ninth
28 Circuit has noted that "[j]oinder of a non-diverse defendant is

deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." Morris, 236 F.3d at 1067. The "burden of proving a fraudulent joinder is a heavy one." Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983); see also, Morris, 236 F.3d at 1068 (finding fraudulent joinder only where it was "abundantly obvious that [the plaintiff] could not possibly prevail" on her claim against the non-diverse defendant).

Here, unless Plaintiffs have failed to state a cause of action against Defendant Air Toxics, and that "failure is obvious according to the settled rules of the state," complete diversity does not exist and Plaintiffs' motion to remand must be granted. In the FAC, Plaintiffs allege two causes of action against Defendant Air Toxics: (1) breach of the implied covenant of good faith and fair dealing; and (2) an accounting.

B.   Analysis

Plaintiffs argue that they have sufficiently stated a cause of action for breach of the implied covenant of good faith and fair dealing against Defendant Air Toxics because Air Toxics was a party to the Stock Purchase Agreement. MTR at 6. Defendant responds that Air Toxics does not owe Plaintiffs an implied duty of good faith and fair dealing because Air Toxics has no underlying contractual obligation to Plaintiffs. Opp. at 6. Defendant also argues that Plaintiffs cannot claim a breach of the implied covenant of good faith and fair dealing by Air Toxics, because the Stock Purchase Agreement expressly includes a

5

"good faith and fair dealing" provision only as to Defendants Lancaster Labs and Eurofins Environmental. Opp. at 7.

Under Delaware law,[2] "an implied covenant of good faith and fair dealing is engrafted upon every contract." Wilgus v. Salt Pond Inv. Co., 498 A.2d 151, 159 (Del. Ch. 1985). In adjudicating an implied covenant claim, courts ask "whether it is clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith – had they thought to negotiate with respect to that matter." Gerber v. Enter. Products Holdings, LLC, 67 A.3d 400, 418 (Del. 2013). To allege a breach of the implied covenant, the plaintiff "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 888 (Del. Ch. 2009).

The parties' central dispute revolves around Defendant Air Toxics' unique relation to the Stock Purchase Agreement: Air Toxics was a party to the Agreement, but was not identified as either a selling or buying party. Rather, Defendant Air Toxics was the subject matter of the Stock Purchase Agreement, as the

---

[2] The Stock Purchase Agreement contains a Delaware choice of law provision. FAC., Ex. A at 10.3. The parties do not appear to dispute that Delaware law governs Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. See Opp. at 4; Reply at 3 (citing Delaware law). Because there is a reasonable basis for the parties' choice of law, the Court will apply Delaware law in evaluating the substantive claims against Defendant Air Toxics. Consul Ltd. v. Solide Enterprises, Inc., 802 F.2d 1143, 1147 (9th Cir. 1986).

company that was being sold by Plaintiffs and bought by Defendants Lancaster Labs and Eurofins Environmental. The issue of whether the "subject company" of a stock purchase agreement, where the company is also a party to that agreement, can be sued for breach of the implied covenant of good faith and fair dealing appears to be an issue of first impression under Delaware law. Neither party cites a case directly on point, and the Court remains cognizant of the fact that the joinder is not "fraudulent" unless Plaintiffs' failure to state a claim against Defendant is "obvious according to the settled rules" of Delaware. Morris, 236 F.3d at 1067.

Although no Delaware court has reached the precise issue, several have indicated that all parties to a contract are bound by the implied covenant. See Katz v. Oak Indus., 508 A.2d 873, 880 (Del.Ch.1986) (noting that "[m]odern contract law has generally recognized an implied covenant to the effect that *each party to a contract* will act in good faith towards the other") (emphasis added); Daystar Const. Mgmt., Inc. v. Mitchell, 2006 WL 2053649, at *6 (Del. Super. July 12, 2006) (noting that the implied covenant of good faith and fair dealing "applies to all parties to a contract"). There can be no dispute that, by signing the Stock Purchase Agreement, Airtox, Inc. – as the predecessor to Air Toxics - was a party to the Agreement. The Agreement expressly defines "Party" as including "all of the [persons or entities] executing this Agreement." FAC, Ex. A at 57. In the absence of more clear guidance from Delaware courts on the issue, and in light of the foregoing indications that all parties to an agreement are bound by the implied covenant, the

law clearly favors Plaintiffs' argument that Defendant Air Toxics was not "fraudulently joined" to this lawsuit.

Defendant's argument that Air Toxics cannot be held liable for breach of the implied covenant because it "owed Plaintiffs no duties under the Stock Purchase Agreement" is both circular and unsupported by the Agreement itself. Beyond the fact that this argument necessarily assumes as true its ultimate conclusion, the text of the Agreement belies its basic premise: that Air Toxics owes no contractual duties to Plaintiffs. Immediately preceding the substantive terms of the Agreement, the contract states that "the Parties agree as follows: . . ." As noted above, Air Toxics is inarguably a "Party" to the contract. Thus, the terms of the contract that follow are necessarily binding on Air Toxics. Moreover, in relevant part, the Agreement states that "the Buying Parties [Lancaster Labs and Eurofins Environmental] covenant and agree that . . . [t]hey will cause [Air Toxics] to conduct the Business in the Ordinary Course of Business[.]" One plausible reading of this covenant is that, along with the Buying Parties, Air Toxics is also contractually obligated to conduct its "Business in the Ordinary Course of Business," (i.e., maintain its focus on emissions and air testing). In light of these provisions, it cannot be said that Defendant Air Toxics has no contractual duties under the Stock Purchase Agreement.

Similarly, Defendant's reliance on the Stock Purchase Agreement's express inclusion of a "good faith and fair dealing" provision as to Lancaster Labs and Eurofins Environmental is misplaced. Opp. to MTR at 8. Defendant appears to be arguing that the Court cannot imply a covenant of good faith and fair

1 | dealing with regard to Air Toxics, because the parties
2 | consciously chose not to name Air Toxics in the expressly-
3 | included provision. Opp. to MTR at 8.  However, Defendant fails
4 | to cite authority for its proposition that the inclusion of a
5 | "good faith and fair dealing" provision as to certain parties to
6 | a contract precludes the applicability of the implied covenant to
7 | remaining parties unnamed in the express provision. Opp. to MTR
8 | at 8.  Rather, the case cited by Defendant merely holds that "the
9 | implied covenant only applies where a contract lacks specific
10 | language governing an issue[.]"  Alliance Data Sys. Corp. v.
11 | Blackstone Capital Partners V L.P., 963 A.2d 746, 770 (Del. Ch.)
12 | aff'd, 976 A.2d 170 (Del. 2009).  In other words, it is not the
13 | presence of another "good faith and fair dealing" provision that
14 | would preclude the applicability of the implied covenant, but the
15 | presence of express language relating to the specific breach the
16 | defendant is accused of committing: i.e., diverting resources
17 | from emissions and air testing to materials testing.  Here, the
18 | Agreement contains no such express language, and the express
19 | "good faith and fair dealing" provision as to the other
20 | Defendants is immaterial to the Court's analysis.
21 |      The Court concludes that Plaintiffs fourth cause of action –
22 | for breach of the implied covenant of good faith and fair dealing
23 | – does not fail to state a claim by a degree that is "obvious
24 | according to the settled rules" of Delaware law.  Morris, 236
25 | F.3d at 1067.  As Plaintiffs have stated at least one viable
26 | claim against Defendant Air Toxics, the Court need not address
27 | //
28 | //

the parties' arguments regarding Plaintiffs' fifth cause of action for an accounting.

### III. ORDER

For the reasons set forth above, the Court GRANTS Plaintiffs' Motion to Remand and DENIES AS MOOT Defendant's Motion to Dismiss.

IT IS SO ORDERED.

Dated: November 26, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE